IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROOSEVELT CAYMAN ASSET
COMPANY II

Plaintiff

vs

CELENIA SANCHEZ MATA

Defendant

CIVIL 15-2477CCC

## OPINION AND ORDER

This is action for collection of monies and foreclosure of a mortgage filed by plaintiff Roosevelt Cayman Asset Company II ("RCAC-II against defendant Celenia Sánchez Mata ("Sánchez Mata") on October 8, 2015, based on a loan originally granted by Golden Financial Services, Inc. to Sánchez Mata on December 28, 2007. On December 15, 2015, Sánchez Mata filed a Motion to Dismiss (d.e. 8), which the Court denied on July 29, 2016. On October 26, 2016, Sánchez Mata filed a Motion for Reconsideration of our Order denying her Motion to Dismiss (d.e. 17), and her Answer to the Complaint (d.e. 18).

On January 25, 2017, Sánchez Mata filed a revised Answer to the Complaint pleading additional affirmative defenses (d.e. 20). On January 19, 2018, Sánchez Mata filed a Motion for Summary Judgment along with a Statement of Uncontested Facts (d.e. 33, 34). On February 7, 2018, RCAC-II filed an Opposition to Sánchez Mata's Motion for Summary Judgment (d.e. 40). On April 24, 2018, the Court entered an Order denying Sánchez Mata's Motion for Summary Judgment (d.e. 46).

On June 5, 2018, the parties filed a Joint Pretrial Report (d.e. 53). On July 10, 2018, Sánchez Mata filed a Motion to Dismiss or for Stay (d.e. 62). On July 11, 2018, RCAC-II filed an Opposition to Sánchez Mata's Motion to

Dismiss or for Stay (d.e. 63).  On July 30, 2018, the Court entered an Order denying Sánchez Mata's Motion to Dismiss or for Stay, and granting RCAC-II until August 27, 2018 to file a Motion for Summary Judgment (d.e. 66).

Before the Court now is the Motion for Summary Judgment, along with a Statement of Material Uncontested Facts and Memorandum of Law, filed by plaintiff RCAC-II on August 27, 2018 (**d.e. 67**).  RCAC-II submitted nine (9) Exhibits in support thereto (d.e. 67, d.e. 68).  On October 17, 2018, Sánchez Mata filed an Opposition to Motion for Summary Judgment and Cross Motion to Strike, with a specific prayer to strike or exclude Exhibits 7 and 9 to RCAC-II's Motion for Summary Judgment (d.e. 76), and an Opposition to RCAC-II's Statement of Material Uncontested Facts (d.e. 77).  The parties subsequently filed related motions and responses on evidentiary issues (d.e. 79-83).

The Court, after considering the pleadings and the record, finds that RCAC-II is entitled to the entry of summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The Court issues and enters the following:

## I.    FINDINGS OF FACT

On December 28, 2007, Sánchez Mata received a mortgage loan from Golden Financial Services, Inc. doing business as Golden Mortgage Bankers, which repayment obligation Sánchez Mata evidenced with mortgage note in the amount of $128,000.00, repayable with an annual interest rate of 7.25%, due on January 1, 2038.

On December 28, 2007, as guarantee of the repayment obligation, Sánchez Mata executed a mortgage deed, Deed No. 362 of First Mortgage,

before Notary Manuel Rivera Meléndez, in favor of Golden Financial Services,

Inc. doing business as Golden Mortgage Bankers, encumbering the property

described in the Spanish language hereinbelow, in the amount of $128,000.00:

> URBANA: Solar marcado con el No. 11 del Bloque "A" de la URBANIZACIÓN METROPOLIS, localizado en el Barrio Martín González del término municipal de Carolina, Puerto Rico, con un área superficial de 325.00 metros cuadrados. En lindes por el Norte, con el solar No. 14, en una longitud de 13.00 metros; por el Sur, con la Calle No. 1, en una longitud de 13.00 metros; por el Este, con el solar No. 10, en una longitud de 25.00 metros; y por el Oeste, con el solar No. 12, en una longitud de 25.00 metros. En este solar enclava una casa de concreto y bloques para vivienda.

> Property number 35,058, recorded at page 212 of volume 1370 of Carolina, Registry of the Property of Carolina, Second Section.

As reflected by the Registry Certification dated October 19, 2015, the

Mortgage Deed and Modification Deed are valid and subsisting liens

encumbering Property No. 35,058, which property is owned by Sánchez Mata.

On August 20, 2010, Sánchez Mata and Doral Bank, as a subsequent

holder of the Mortgage Note, executed a special repayment plan based on

Sánchez Mata's defaulting of the terms and conditions of the loan.

Sánchez Mata and Doral Bank modified the principal amount, interest,

maturity date and last payment, becoming its new principal of $124,910.88,

with annual interest of 4.350%, beginning on October 1st, 2010 up to

September 1st, 2011, with monthly payments of $451.07, interest only, with

annual interest of 7.25%, beginning on October 1st, 2011 up to September 1st,

2012, interest only, with monthly payments of $751.78; with annual interest of

7.25%, beginning on October 1st, 2012 up to maturity on January 1st, 2048,

principal and interest, with monthly payments of $815.18; and the last payment

in the amount of $7,360.24.

On February 27, 2015, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral Bank, and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver (the "Receiver").

On March 10, 2015, RCAC-II executed a Limited Power of Attorney constituting and appointing Rushmore Loan Management Services, LLC ("Rushmore"), as its true and lawful Attorney-in-Fact, in RCAC-II's name, place and stead and for RCAC-II's benefit, for the purpose of performing all acts and executing all documents in the name of RCAC-II to effectuate the enumerated transactions in respect of any of the deeds of mortgage and mortgage notes secured thereby for which RCAC-II is the legal holder (whether RCAC-II is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage) and for which the Attorney-in-Fact is performing sub-servicing activities, all subject to the terms of the Agreement (see d.e. 40-2). The Receiver sold and transferred to RCAC-II Sánchez Mata's loan, note, and collateral, as of June 1, 2015 (see d.e. 60-1 and d.e. 60-2). By a subsequent endorsement, RCAC-II is now the owner and holder of the mortgage note in the amount of $128,000.00, originally issued to the order of Golden Financial Services, Inc. d/b/a Golden Mortgage Bankers.

On July 28, 2015, RCAC-II notified Sánchez Mata that her loan was in default and of its intention to foreclose.    On October 8, 2015, RCAC-II filed the Complaint at bar against Sánchez Mata for collection of monies and foreclosure of Mortgage.

Sánchez Mata defaulted on the terms and conditions of the Mortgage Note since September 1, 2014.  As certified under the penalty of perjury by Abelardo O. Dauhajre Dávila, Associate Counsel of Rushmore Loan Management Services, LLC, according to the loan servicer's records, as of September 19, 2018, Sánchez Mata owed RCAC-II the principal amount of $130,233.38, accrued interest since September 1, 2014 in the amount of $36,814.95, at the annual interest rate of seven point twenty five percent (7.25%), late charges amounting to 5% of any and all monthly payments or installments in arrears over fifteen (15) days after the installment is due, amounting to $2,780.64, escrow account deficiency in the amount of $2,945.63, corporate advances in the amount of $14,111.36, property inspections in the amount of $36.16, and expressly agreed-upon attorney's fees and legal costs in the amount of $12,800.00, for a total of $186,921.52.

## II.    CONCLUSIONS OF LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when ". . . [t]he pleadings, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The procedure authorized by Rule 56 "is a method for promptly disposing of actions in which there is no genuine issue as to any material fact as in which only a question of law is involved."  10 Wright, Miller & Kane Federal Practice and Procedure, Civil 2d, Sec. 2712 at p. 563.  In order to grant summary judgment, the trial court must determine if there are any "material" factual issues which are identified depending on the substantive law that should be

resolved and also, whether such issues are also "genuine." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986), at p. 2510. The First Circuit's standard for granting summary judgment was set forth in the seminal case of Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976); cited with approval in Pahlavi v. Palandjian, 809 F.2d 938 (1st Cir. 1987); Computer Systems of America v. International Buss. Machines, 795 F.2d 1086 (1st Cir. 1986); Mutual Fire, Marine & Inland Ins. Co. v. Costa, 789 F.2d 83 (1st Cir. 1986); Bratt v. International Business Machines Corp., 785 F.2d (1st Cir. 1986); Finn v. Consolidated Rail Corp., 782 F.2d 13 (1st Cir. 1986); Emery v. Merrimack Valley Wood Products, Inc., 701 F.2d 985 (1st Cir. 1983); Astra Pharmaceutical Products, Inc. v. Bechman Instruments, Inc., 718 F.2d 120 (1st Cir. 1983); Pignons S.A. de Mecanigne v. Polaroid Corp., 657 F.2d 484 (1st Cir. 1981).

A "material issue" is one that affects the outcome of the litigation; therefore, if a factual issue is not relevant to the resolution of the controlling legal issues, summary judgment should be granted; Pignons, *supra*; Finn, *supra*; Molinos de Puerto Rico v. Sheridan Towing Co., 62 F.R.D. 172 (D.P.R. 1973). As stated by the Supreme Court, ". . . the materiality determination on a motion for summary judgment rests on the substantive law, and it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson, 106 S.Ct. at p. 2510.

The function of the summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." Vega-Rodriguez v. Puerto Rico Telephone Co., 110 F.3d 174, 178 (1st Cir. 1997) (*citing* Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794

(1st Cir. 1992)).  Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law."

When, as here, the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment, the non-moving party bears the burden of showing the existence of some factual disagreement sufficient to defeat the motion.  However, the burden is satisfied only if the cited disagreement relates to a genuine issue of material fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  "In this context, 'genuine issue' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law."  United States v. One Parcel of Real Property, Etc., 960 F.2d 200, 204 (1st Cir. 1992).  Therefore, a factual issue is material if it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment.  See U.S. Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950, 953 (1st Cir. 1987).

The non-moving party bears the burden of showing that factual issues exist.  When meeting its burden, the opposing party may not rest upon mere conclusory allegations, improbable inference, unsupported speculations or denials in its pleading. Instead, it must set forth specific facts, which arise from definite and competent evidence to establish the existence of a genuine issue for trial. See Rathbun v. Autozone, Inc., 361 F.3d 62 (1st Cir. 2004); Pagano v.

Frank, 983 F.2d 343, 347 (1st Cir. 1993); Wynne v. Tufts Univ. School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. den. 123 L.Ed. 2d 470.  As long as it is "the nonmovant [that] bears the ultimate burden of proof at trial, he [will] not [be able to] defeat a motion for summary judgment by relying upon evidence that is 'merely colorable' or not 'significantly probative.'" See Pagano, 983 F.2d at 347.

"[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (citations omitted).

In this case, there are no genuine issues of fact that would require the Court to schedule a trial to adjudicate a statutory matter on the uncontested facts presented by RCAC-II.  Since the Court is summarily disposing of the case, it will address several affirmative defenses raised by Sánchez Mata during the process.

## A.  Standing

RCAC-II, as assignee of the FDIC, has shown standing to collect on the promissory note subscribed by Sánchez Mata.

Pursuant to the Puerto Rico Commercial Transactions Act, a negotiable instrument is one that conveys:

> a promise or an unconditional order for payment of a specific amount of money, with or without interest or other charges described in the order or promise, if it is (1) payable to the bearer o to its order at the moment of emission or when it is first possessed by a bearer; (2) is payable upon presentment or on a certain date; and (3) does not specify any other obligation or instruction upon the payor other than the payment of the amounts; notwithstanding, the promise of payment may contain (i) a

commitment or power to give, maintain, or protect collateral to secure payment; (ii) an authorization or power to the bearer to admit judgment or to execute the collateral or dispose of it in any other way; or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

19 P.R. Ann. Laws § 504.

A note will be payable to the bearer when it:

states that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise of order is entitled to payment; . . .

19 P.R. Laws Ann. § 509(a)(1).

Regarding the manner in which an instrument is transferred, the Puerto Rico Commercial Transactions Law:

(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

19 P.R. Ann. Laws § 551.

RCAC-II has submitted a copy of the mortgage note and the allonge with an endorsement in favor of RCAC-II (see d.e. 68-1). In addition, RCAC-II has submitted the Power of Attorney, executed by the FDIC, authorizing David Powell, Vice-President at Rushmore Loan Management Services, LLC, to endorse any and all notes transferred from the FDIC, as receiver for Doral Bank, in favor of RCAC-II (see d.e. 68-7).

RCAC-II acquired by endorsement and assignment from the FDIC, the promissory note subscribed by Sánchez Mata. Accordingly, RCAC-II became

the successor to the rights, obligations, credits, powers, and assets of the FDIC.

## B.   Redemption of Litigious Rights

Section 1425 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3950, titled, "Right of debtor to extinguish litigated credit," states:

> When a litigated credit is sold, the Defendants shall have the right to extinguish the same by reimbursing the assignee for the price the later paid for it, the judicial costs incurred by him, and the interest on the price from the day on which the same was paid.

> A credit shall be considered as litigated from the day the suit relating to the same has been answered.

> The Defendants may make use of his right within nine (9) days, counted from the day the assignee should demand payment of him.

Further, a credit is regarded as litigious when, upon being litigated, a final judgment is required to ascertain its existence, "that is, it is one which is in doubt and one in which the rights are uncertain. For a credit to be considered litigious it is essential that the litigation pending at the time of sale or assignment of credit concern the existence of the credit itself and not merely the consequences of its existence once final judgment is rendered." Consejo de Titulares v. C.R.U.V., 132 P.R.R. 707 (1993); citing Cámara Insular, Etc. v. Anadón, S. en C., 83 P.R.R. 360 (1961), Santana v. Quintana, 52 P.R.R. 725 (1938) (Emphasis added).

The credit upon which Sánchez Mata asserts an alleged right of redemption is a debt which Sánchez Mata admitted in her Amended Answer to Complaint that did exist (see d.e. 30, p. 2, ¶¶ 9-10), and is therefore not a credit which existence is in question, falling outside the Puerto Rico Civil Code's right of redemption.

### C.    Compulsory Mediation under Puerto Rico Law No. 184

P.R. Law No. 184 of 2012, establishes a compulsory mediation mechanism in foreclosure proceedings where the property in risk of foreclosure is the principal residence of the defendant.  The compulsory mediation referral is a jurisdictional requirement which must be observed if the defendant meets the two essential requirements set forth in Law 184: (1) an answer to the complaint must be filed and (2) defendant must show that the property is indeed its principal residence.

Nevertheless, Article 3 of Law 184 clearly defines the effect of the jurisdictional requirement to the Courts of Puerto Rico.  "This shall be a jurisdictional requirement in the proceedings carried out in the Courts of Puerto Rico, where the proceeding involves the foreclosure of a mortgage guaranteed with a property that constitutes the debtor's personal homestead . . ."  Art. 3, P.R. Law No. 184 of 2012.

The United States District Court, for the District of Puerto Rico, a federal court, is not a "Court of Puerto Rico."   As such, it is not bound by the jurisdictional requirements set forth in a State law that facially limits its own applicability to State courts.  See Roosevelt Cayman Asset Company v. Pedro G. Velazquez-Rodriguez, et al., Civil No. 15-2721(CCC) (D.P.R. Order, May 3, 2016).

On July 30, 2018, the Court had already ruled that Sánchez Mata's allegations regarding compulsory mediation as a jurisdictional requirement are inmeritorious (see d.e. 66).

### D. **Puerto Rico Law No. 169 of 2016 – "Ley de Ayuda al Deudor Hipotecario" and CFPB Regulations**

Sánchez Mata has argued that RCAC-II did not comply with Puerto Rico Law 169 of 2016 but does not specify any misconduct.

Puerto Rico Law 169 bars a mortgage creditor from filing a complaint seeking mortgage foreclosure when the borrower has submitted a request for loss mitigation, and for the following one hundred twenty (120) days following said request. Additionally, when a request for loss mititgation has been submitted after the commencement of a foreclosure case, the mortgage creditor will seek to stay proceedings until the vetting process has been carried out.

Puerto Rico Law No. 169 was enacted on August 9, 2016 and came into effect sixty days after its approval. Naturally, as the present complaint was filed on October 8, 2015, Plaintiff was not bound by the sections pertaining to the filing of the complaint. After three (3) years since the filing of the complaint, Sánchez Mata failed to prosecute a loss mitigation request that would entail the staying of proceedings under the captioned case pursuant to Puerto Rico Law No. 169 and CFPB Regulations.

### E. **Applicable Substantive Law**

Under Article 1044 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 2994, "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Moreover, "[t]he validity and fulfillment of contracts cannot be left to the will of one of the contracting parties." 31 L.P.R.A. § 3373 Article 1208 of the Civil Code of Puerto Rico.

Contracts in the Commonwealth of Puerto Rico are created as long as the following requisites exist: (1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause for the obligation which may be established. 31 L.P.R.A. § 3391; see Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 871 (1995). Furthermore, in clarification of § 3391, § 3401 states in relevant part that, "consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." 31 L.P.R.A. § 3401. Thus, the traditional elements of offer, acceptance and consideration in the formation of contract under common law jurisdictions are also reflected in §§ 3391 and 3401 of Puerto Rico's Civil Code.

Article 1644 of Puerto Rico's Civil Code states that the person who receives money or other generic thing as a loan, is obligated to return to the creditor money or a thing of the same kind and value. See 31 P.R. Laws Ann. § 4571.

Puerto Rico Mortgage Law Article 155, 30 P.R. Laws Ann. § 2551, states that a mortgage imposes a legal lien upon the property over which it is constituted, whoever is their owner or possessor, requiring fully securing compliance of the obligation which it guarantees. It is an essential provision of the mortgage contract that, if the obligated party defaults as to the principal obligation, the mortgaged property may be sold to satisfy the guaranteed credit. See Puerto Rico Civil Code Article 1751, 31 P.R. Laws Ann. § 5002.

Furthermore, under Puerto Rico law, as soon as a borrower accepts the loan disbursement and subscribes a mortgage note, the terms of the mortgage deed securing the note become contractually binding to both parties, including

the right to the loan's acceleration.   See <u>Liechty v. Descartes Sauri</u>, 109 D.P.R. 496, 502 (1980).

Finally, Article 1061 of the Civil Code of Puerto Rico provides that the indemnity for losses and damages due to a defendant's default to comply with his or her obligation to pay an amount of money shall consist in the payment of the legal interest.  <u>See</u> 31 L.P.R.A. § 3025.

In light of the foregoing, the Court finds that Defendant Celenia Sánchez Mata failed to comply with the terms and conditions of the mortgage loan, now owned by Roosevelt Cayman Asset Company II, and enters judgment in favor of plaintiff, Roosevelt Cayman Asset Company II, in the amount of $186,921.52, as of September 19, 2018, which will continue to accrue interest and charges at the contractual rates.

SO ORDERED.

At San Juan, Puerto Rico, on March 12, 2019.

S/CARMEN CONSUELO CEREZO
United States District Judge
